UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIAMOND BLAIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-CV-627 JAR |
| ) | |
| ANGELA WALTERS, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Self-represented Plaintiff Diamond Blair brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $1.70. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will dismissal this matter for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

### **Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an application to proceed in district court without prepaying fees or costs. ECF No. 2. In his application, Plaintiff states that he has no job, no income, no assets, and no money in his prison account. *Id.* at 1-2. A few weeks after filing the application, Plaintiff submitted a certified inmate account statement showing average monthly deposits of $8.50 from a prison job. ECF No. 4. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $1.70, which is twenty percent of Plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Complaint

Plaintiff, an inmate at Potosi Correctional Center ("PCC"), brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights by nine PCC employees: (1) Angela Walters (Case Manager); (2) Joshua Browers (Case Manager); (3) Daniel Alfard (Case Manager); (4) Lonnie Smallen (Functional Unit Manager ("FUM")); (5) Jennifer Price (Assistant Warden); (6) William Milam (FUM); (7) Perry Arnold (Case Manager); (8) Martin Rodriguez (Correctional Officer); and (9) Jody Glore (Warden). ECF No. 1 at 2-5. He names all of the defendants in both their individual and official capacities. *Id.*

Plaintiff alleges Equal Protection and Due Process violations. *Id.* at 6-38. Prior to being transferred to PCC, Plaintiff was incarcerated at South Central Correctional Center where he was attacked twice in 2015, resulting in substantial injuries. Plaintiff was transferred to Jefferson City Correctional Center and then to PCCC in August 2017. Upon intake at PCCC, Plaintiff was placed in a general population unit despite his request for protective custody ("PC"). In the first six months at PCCC, Plaintiff was attacked twice and moved to administrative segregation after each attack. Sometime in May or June 2018, Plaintiff was moved to the PC unit. *Id.* at ¶¶ 1-20.

Once in the PC unit, Plaintiff alleges that Defendants treated him (as an African American inmate) differently than they treated white inmates. Plaintiff alleges that he received conduct violations for minor infractions that white inmates would not get write-ups for. Plaintiff asserts that Defendants used administrative segregation placement as a "retaliatory means" to remove Plaintiff from the PC unit and harass him. *Id.* at ¶ 34. Plaintiff alleges that he filed grievances and his attorney filed a complaint with the Missouri Department of Corrections in an attempt to get him back into the PC unit. Subsequently he was reassigned to the PC unit sometime around April 2019. Plaintiff alleges that Defendants retaliated for his reassignment with repeated searches of his cell at two in the morning. *Id.* at ¶¶ 35-45.

In October 2019, Plaintiff fought with another inmate while assigned to the PC unit. *Id.* at ¶ 51. He received a conduct violation for the fight, but he alleges that the violation was modified to a minor assault rule violation in a method that was not in compliance with PCC rules. After being found guilty of the conduct violation, Plaintiff asserts that he was assigned to administrative segregation indefinitely. *Id.* at ¶¶ 53-64. Plaintiff alleges that his repeated requests for assignment to the PC unit have been denied "as a discriminatory and retaliatory method to get even with [him] for fighting a white inmate" and "to punish [him] for his continued requests to be reassigned to the PC unit." *Id.* at ¶¶ 91-92.

At one PC assignment hearing, Plaintiff was found to be "a threat to the PC wing" and denied placement there. *Id.* at ¶ 89. According to his grievance paperwork, Plaintiff has been denied reassignment for "the safety and security of the PC unit" and because his "previous three assignments to the protective custody unit have not resulted in positive behavior." ECF No. 1-1 at 15, 17. However, according to Plaintiff, several white inmates have returned to the PC unit after violating prison rules (including fighting) more than three times. ECF No. 1 at ¶¶ 129-140.

Plaintiff states that administrative segregation is "significantly harsher conditions" than PC and it "does not have opportunities to participate in work, or other institutional programs."[1] *Id.* at ¶ 154.

Plaintiff asserts that Defendants are trying to "break [him] from requesting PC" and get him "to sign enemy waivers with listed enemies in the prison's general population" so that he can be returned to general population. *Id.* at ¶¶ 68, 137, 149. He even goes so far as to allege that all nine defendants have "adopted an unconstitutional policy" of "discriminatory, differential, and retaliatory treatment" of him. *Id.* at 21. Plaintiff describes this unconstitutional policy as trying to force Plaintiff "to sign enemy waivers to return to general population where he will be assaulted by known and unknown enemies" and trying to "transfer [Plaintiff] to another prison where they are aware of his enemy situation and [where] … he face[s] the risk of possibly being assaulted." *Id.* at ¶¶ 173-74.

Plaintiff also alleges that Defendants have "abuse[d] the grievance system" and violated his "procedural due process," in violation of Missouri statutory law and PCC institutional policies. *Id.* at ¶¶ 100-28, 180-98. Specifically, Plaintiff alleges that defendant FUM Milam violated prison rules when he gave Plaintiff a punishment that exceeded the maximum disciplinary amount, and that Milam abused his authority to keep Plaintiff out of PC because of Milam's "irrational and arbitrary animus" toward Plaintiff. *Id.* at ¶¶ 155-66. As for defendant correctional officer Rodriguez, Plaintiff's alleges that Rodriguez violated his procedural due process rights when Rodriguez modified and rewrote Plaintiff's October 2019 conduct violation involving his fight with a white inmate.[2] *Id.* at ¶¶ 199-223.

---

[1] The Court notes that the certified inmate account statement submitted in this case by Plaintiff shows that he has received 'Payroll Tip' from an institutional job for every month shown on the statement (December 2020 through June 2021). ECF No. 4.

[2] Plaintiff asserts that the rewrite was recommended by defendant case manager Browers and that it was against PCC policy. *Id.* at ¶ 207-15. Rodriguez originally issued a conduct violation for "Rule 19.1 Creating a disturbance" as the primary infraction, and "Rule 25.1 Fighting" as the secondary infraction. Plaintiff asserts that Rodriguez modified the report to contain only the violation of "10.1 Minor Assault." *Id.* at ¶¶ 200-01, 206. Plaintiff explains

Plaintiff asserts additional allegations of procedural due process violations based on the treatment of his "minor assault" violation as a "major" violation; deprivation of a corrective hearing; improper violation and grievance handling; imposition of "illegal" sanctions; and denial of "meaningful review." *Id.* at ¶¶ 224-343. Again, these allegations are all based on alleged violations of Missouri statutes and PCC policies.

Plaintiff asserts that he suffered injuries in a June 2020 attack by another inmate that would not have occurred "but for defendants' continued illegal confinement" of him in administrative segregation. ECF No. 1 at 39, 41. For relief, plaintiff seeks compensatory and punitive damages. *Id.* at 41.

**Plaintiff's Related Litigation**

On his form complaint in the section titled 'Previous Lawsuits,' Plaintiff lists three other cases that he has filed "dealing with the same facts involved in this action." ECF No. 1 at 44-47. Two of the cases were filed in the 24th Judicial Circuit Court in Washington County, Missouri: case numbers "20WA-CC00326" and "20WA-CC00303." *Id.* at 44, 46. Plaintiff describes the first of these state court cases as a still-pending matter that involves the same nine defendants as those named in this case. *Id.* at 44-45. The second state court case was "dismissed and currently being appealed." *Id.* at 46. Plaintiff describes the third case as a federal case in the Western District of Missouri involving defendants "Roger Terry, et al", but he does not provide a case number. *Id.* at 45. According to Plaintiff, the case result was: "defeat in jury trial, Judge dismissed Jury sua sponte ruling for Defendant Terry; case appealed." *Id.* at 47.

---

the minor assault as a "level 2 sanction with a maximum sanction of [disciplinary segregation] confinement of 20 days." *Id.* at ¶ 301. Plaintiff later alleges that he was improperly confined for two 20-day periods for this conduct violation (instead of one 20-day period). *Id.* at ¶¶ 296-304. However, Plaintiff does not explain how the allegedly improper modification from one primary and one secondary infraction, to one minor assault violation, changed his ultimate punishment.

Independent review of Plaintiff's state court cases on Missouri Case.net, the State of Missouri's online docketing system, shows that Plaintiff filed a civil case in the Circuit Court of Washington County, Missouri on August 13, 2020, against the same nine defendants involved in this matter. *See Blair v. Walters, et al.*, Case No. 20WA-CC00326 (24th Jud. Cir. Aug. 13, 2020). Plaintiff's claims in that matter appears to be the same as those brought in this civil complaint currently before the Court. He alleged Equal Protection and Due Process violations based on the same set of facts and circumstances. In that matter, the state court granted Defendants' motion to dismiss on the grounds of sovereign immunity and failure to state a valid claim for relief on January 6, 2021. Plaintiff's initial attempt at appealing this decision was dismissed for lack of jurisdiction because he did not yet have a final, appealable judgment. *See Blair v. Walters, et al.*, No. ED109462 (Mo. Ct. App. E.D. Feb. 8, 2021). Once the final judgment was issued by the Circuit Court on May 23, 2021, Plaintiff filed another notice of appeal. *See Blair v. Walters, et al.*, No. ED109712 (Mo. Ct. App. E.D. June 16, 2021). As of the date of this Order, this appeal is still pending with the Missouri Court of Appeals with Plaintiff's brief due by September 20, 2021.

The other state court matter referred to by Plaintiff in his complaint, was filed in July 2020 against the Missouri Department of Corrections and eight MDOC employees at PCC – four of whom are also named in this suit. *See Blair v. Glore, et al.*, Case No. 20WA-CC00303 (24th Jud. Cir. July 27, 2020). That case involved allegations of denial of Plaintiff's First Amendment rights to freedom of religion regarding his practice as a Black Hebrew Israelite at PCC. In October 2020, the state court dismissed the matter, finding that sovereign immunity barred official capacity claims; federal claims were barred by a failure to exhaust administrative remedies; and because Plaintiff's allegations failed to state a claim upon which relief may be granted under the Missouri Prisoner Litigation Reform Act. *See* Rev. Mo. Stat. § 506.375. Plaintiff appealed this decision.

*See Blair v. Glore, et al.*, No. ED109322 (Mo. Ct. App. E.D. Nov. 24, 2020). The state appellate court recently issued a decision affirming the trial court dismissal.

Finally, the third case referred to by Plaintiff in his complaint was a federal case he filed in 2015 in the United States District Court for the Western District of Missouri. In that case, Plaintiff alleged that the Warden of South Central Correctional Center failed to protect him from an attack by a fellow inmate. *See Blair v. Bowersox, et al.*, No. 6:15-CV-3532-RK (W.D. Mo. Dec. 9, 2015). The attack was the second attack Plaintiff suffered in a short period of time and it occurred soon after the Warden had approved Plaintiff's return to general population. The case went to a jury trial but after the parties rested, the defendant Warden was granted judgment as a matter of law. The trial testimony in that matter revealed that in April 2015 defendant Warden deemed Plaintiff "just too aggressive for" the PC Unit. *Id.* at ECF No. 245. The Eighth Circuit Court affirmed the district court's ruling in an opinion published in July 2019. *See Blair v. Bowersox, et al.*, No. 18-1486 (8th Cir. July 12, 2019).

### Discussion

Liberally construing the allegations of self-represented Plaintiff's complaint, the Court finds that this case is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted. First, it appears that Plaintiff is bringing the same claims in this case that have already been litigated and decided in state court. As such, his claims are barred by res judicata. Second, to the extent Plaintiff seeks review by this Court of the state court decision on these claims, the Court lacks subject-matter jurisdiction for such review under the *Rooker-Feldman* doctrine. Finally, even if these were newly brought claims, Plaintiff's official capacity claims are barred by sovereign immunity and for failure to name defendants suable under § 1983. As to the remaining claims brought against Defendants in their individual capacities, the factual allegations as pled are insufficient to state actionable claims of Equal Protection and Due

Process violations. Moreover, Plaintiff's claims based on violations of Missouri statutes and PCC rules are not appropriately brought under 42 U.S.C. § 1983. For all of these reasons, Plaintiff's complaint will be dismissed.

## I.     Res Judicata Bars Relitigation of Claims

"Res judicata incorporates the concepts of both issue preclusion and claim preclusion. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. A party is precluded from litigating such a matter in a subsequent case." *Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013) (internal citations and quotations omitted). Issue preclusion has five elements:

(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;

(2) the issue sought to be precluded must be the same as the issue involved in the prior action;

(3) the issue sought to be precluded must have been actually litigated in the prior action;

(4) the issue sought to be precluded must have been determined by a valid and final judgment; and

(5) the determination in the prior action must have been essential to the prior judgment.

*Id.* at 1102-03. This principle of res judicata applies in the context of § 1983 claims and acts as a bar to the relitigation of constitutional issues. *Robbins v. Dist. Ct. of Worth Cnty., Iowa*, 592 F.2d 1015, 1017-18 (8th Cir. 1979).

Plaintiff's state court case involved the same nine defendants and alleged the same constitutional issues of Equal Protection and Due Process. Plaintiff's claims were actually litigated, determined by a final judgment, and essential to the state court judgment. Based on this, it appears that Plaintiff's claims here are precluded from relitigation.

## II.    *Rooker-Feldman* Doctrine Bars Review of State Court Judgment

This federal court does not sit in review of the state court decision on the same claims. Under the *Rooker-Feldman* doctrine, the Court does not have jurisdiction to revisit these allegations. "The basic theory of the *Rooker-Feldman* doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment." *Dodson v. Univ. of Ark. for Med. Sci.*, 601 F.3d 750, 754 (8th Cir. 2010) (internal quotations omitted). The doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

> Litigants can choose whether to pursue . . . claims in state or federal court. Once a party has litigated in state court, however, he cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [section] 1983 action. In other words, if a litigant has raised and lost claims in state court, he may not recast those claims under section 1983 and try again. He must follow the appellate procedure through the state courts and seek review before the Supreme Court.

*Dodson*, 601 F.3d at 754-55 (quoting *Prince v. Ark. Bd. Exam'rs in Psych.*, 380 F.3d 337, 340 (8th Cir. 2004) (internal citations and quotations omitted)).

Plaintiff chose to pursue these claims in Missouri state court and cannot circumvent *Rooker-Feldman* by recasting his state court case as a federal action. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) ("If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication."). Therefore, to the extent Plaintiff seeks review of the state court judgment on these claims, this federal district court lacks subject matter jurisdiction

pursuant to the *Rooker-Feldman* doctrine. *See also Postma v. First Fed. Sav. & Loan of Sioux City*, 74 F.3d 160, 162 (8th Cir. 1996).

### III.   Dismissal of Official Capacity Claims

Even if Plaintiff was bringing these claims for this first time to this Court, his claims would still be subject to dismissal for failure to state a claim. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Here, Defendants are all employees at PCC which is a Missouri Department of Corrections ("MDOC") facility and state agency. Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

In addition, in the absence of a waiver, the Eleventh Amendment[3] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998); *see also Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment."). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh

---

[3] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

- 11 -

Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court."); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court."); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." (internal quotation and citation omitted)).

Accordingly, Plaintiff's official-capacity claims brought against all nine defendants are barred by sovereign immunity and for failure to name defendants suable under § 1983.

### IV. Insufficient Factual Allegations: Failure to State a Claim

Plaintiff's complaint suffers from multiple other pleading problems which require dismissal here. To the extent that Plaintiff seeks relief for violations of Missouri statutes and noncompliance with PCC rules, these are not valid claims under § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability). Also, there is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th

Cir. 1993) (grievance procedure is procedural right only and does not confer substantive right on inmate).

In addition, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Plaintiff's 'Statement of Claim' contains 347 paragraphs of handwritten information, divided into multiple sections and subsections, alternating between providing "material facts" and making legal conclusions. Although Plaintiff makes some allegations against specific defendants by name, many of his allegations are made against "Defendants" generally. *See* ECF No. 1 at ¶¶ 91-92, 99, 109, 171, 250. These broad, general allegations do not establish personal involvement or direct responsibility by Defendants.

Furthermore, although civil rights pleadings should be construed liberally, at the very least, the complaint must contain facts which state a claim as a matter of law. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). Plaintiff's complaint contains insufficient factual allegations to state claims for violations of Equal Protection and Due Process.

## A. Equal Protection Claim

Plaintiff wants to be in the PC unit but he alleges that Defendants don't want him there and have treated him differently than similarly situated white inmates due to his race. He also alleges that he has been the target of unfair treatment in terms of being written up for minor infractions because he continues to request the PC unit. Defendants do not think Plaintiff belongs in the PC unit due to reasons of "safety and security," and after finding Plaintiff to be "too aggressive" and a "threat."

The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause ... is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Tp.*, 247 U.S. 350, 352 (1918). Unequal treatment of "'those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 721 (8th Cir. 1996) (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). "The good faith of [state] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." *Sunday Lake*, 247 U.S. at 353. Without more, "opprobrious epithets" like "'willful' and 'malicious'" and characterizations of an officer's conduct "as an unequal, unjust, and oppressive administration of the laws" are not enough. *Snowden*, 321 U.S. at 10.

Plaintiff also seems to be attempting to allege a "class-of-one" Equal Protection claim. ECF No. 1 at ¶ 46. The Supreme Court recognizes a "class of one" Equal Protection claim "where the plaintiff [does] not allege membership in a class or group," but instead "plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *accord Barstad v. Murray Cnty.*, 420 F.3d 880, 884 (8th Cir. 2005). "Identifying the disparity in treatment is especially important in class-of-one cases." *Barstad*, 420 F.3d at 884.

However, this class-of-one theory has limits. In light of the importance of "a clear standard against which departures, even for a single plaintiff, [can] be readily assessed," the class-of-one theory may not apply to "some forms of state action ... which by their nature involve discretionary

decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602-04 (2008).

Here, Plaintiff's Equal Protection claim fails because the allegations of the complaint do not establish that Plaintiff was intentionally and purposefully discriminated against as compared to a similarly situated individual. Plaintiff argues that other inmates who are white were allowed back in the PC unit after also receiving three prior violations. However, Plaintiff does not establish that the prior violations of those other inmates raised the same safety and security concerns as the violations received by Plaintiff. Therefore, Plaintiff has not demonstrated that he and other white inmates are "entitled to be treated alike" or that they are "similarly situated" in relation to their PC housing assignments. It is not enough to simply state that Defendants' decisions are based on racial animus. *See Snowden*, 321 U.S. at 10. In addition, prison safety and security decisions involve subjective, individualized assessments that require discretionary decision-making. Plaintiff has not established that there was no rational basis for the way he was treated. As such, Plaintiff's complaint fails to state individual-capacity claims against Defendants for Equal Protection violations.

### B. Due Process Claim

Prisoners may claim the protections of the Due Process Clause, and may not be deprived of life, liberty, or property without due process of law. *Haines v. Kerner,* 404 U.S. 519 (1972). However, a due process claim "is cognizable only if there is a recognized liberty or property interest at stake," and courts "need reach the question of what process is due only if the inmates

establish a constitutionally protected liberty interest." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted).

The Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 4 72, 484 (1995); *see also Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). Therefore, this Court need only reach the question of what process was due if Plaintiff's allegations demonstrate that his placement in administrative segregation instead of PC created an atypical and significant hardship under *Sandin. See Beaulieu,* 690 F.3d at 1047.

Here, Plaintiff only states that administrative segregation is "significantly harsher conditions" than PC and it "does not have opportunities to participate in work, or other institutional programs." ECF No. 1 at ¶ 154. However, Plaintiff's certified inmate account statement shows that he has been paid for working a prison job in recent months. The complaint contains no factual allegations showing that Plaintiff's conditions of confinement impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life. The Eighth Circuit has found that placement in disciplinary segregation – which is more restrictive than administrative segregation – does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship under *Sandin); see also Hemphill v. Delo,* 124 F.3d 208 (8th Cir. 1997) (unpublished) (four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation not atypical or significant).[4]

---

[4] Even if it could be said that Plaintiff had established a constitutionally protected liberty interest, he would fail to state a claim for relief because his complaint shows he received due process. "Due process is flexible and calls for such procedural protections as the particular situation demands," but its fundamental requirement is the opportunity

## V.   Conclusion

Plaintiff is asking this Court to sit in review of decisions made by PCC Defendants regarding discipline and appropriate housing assignments, based on a desire to maintain safety and security at PCC. Although prisoners retain their constitutional rights, there are limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). A prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*; *see also Sandin v. Connor*, 515 U.S. 472, 482 (1995) (stating that "federal courts ought to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment."); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) (stating that "prison administrators are accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))).

Despite Plaintiff's repeated assertions that Defendants have denied his requests for PC unit assignment based on their spitefulness and racial animus, evidence indicates (and Plaintiff admits) that he has been involved in numerous physical altercations while incarcerated. Plaintiff's allegations are speculative and insufficient to draw the inference that Defendants had any hidden

---

to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976) (internal quotations and alteration omitted). The Supreme Court has held that, in prison discipline cases, the requirements of due process are satisfied if "some evidence" supports the prison disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). This standard does not require this Court to examine the entire record, independently assess witness credibility, or weigh evidence. *Id.* (citations omitted). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 445-56 (citing *United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133-34 (1924); *Willis v. Ciccone*, 506 F.2d 1011, 1018 (8th Cir. 1974)). In this case, Plaintiff admits to having been involved in multiple prison fights and therefore, some evidence supports the PCC Defendants' decisions.

animus behind their housing assignment decisions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court is unpersuaded that PCC employee Defendants are doing anything besides attempting to maintain a safe facility.

As such, for the many reasons discussed above, Plaintiff's complaint fails to state a claim on which relief may be granted and it will be dismissed under 28 U.S.C. § 1915(e)(2).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.70 within **twenty-one (21) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to any defendant because the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendants Angela Walters, Joshua Browers, Daniel Alfard, Lonnie Smallen, Jennifer Price, William Milam, Perry Arnold, Martin Rodriguez, and Jody Glore are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 8th day of September, 2021.

                                                                        */s/ John A. Ross*
                                                                        JOHN A. ROSS
                                                                        UNITED STATES DISTRICT JUDGE